## Case No. 4,221.
### D'WOLF v. HARRIS.
[4 Mason, 515.] [1]
Circuit Court, D. Massachusetts. Oct. Term, 1827. [2]

[1] [Reported by William P. Mason, Esq.]
[2] [Affirmed in 4 Pet. (29 U. S.) 147.]

G. Blake, Dist. Atty., for defendant, ▮

 

STORY, Circuit Justice, in summing up the case, said: This is an action of replevin for twenty-three cases of silks, valued at $6000. The defendant, who is the marshal of this district, has pleaded, first, non cepit; and, secondly, that the goods in question are the property of one George D'Wolf, and not of the plaintiff, and he makes an avowry for a return, stating, that the goods were attached by him, as marshal of the district, as the property of George D'Wolf, in a suit brought against him in behalf of the United States. Issue is joined between the parties upon both pleas.

The nature of the writ of replevin is such in general, that it requires the party, to maintain it, to have property in the goods, and an actual or constructive possession of them. The pleadings, however, in the present case, narrow down the case to the question of the taking of the goods, and whose property they were at the time of the attachment. Now the return of the marshal, which has been read, upon the writ of attachment, is conclusive upon the first issue, as to the taking, and establishes it beyond any possible doubt; and therefore the real question is upon the second issue, whether the property belonged to the plaintiff, so as to entitle him to maintain this action. The plaintiff claims them as the proceeds of the cargo of the ship Octavia and brig Arab, which were assigned to him by a deed of assignment, executed between himself on the one part, and George D'Wolf and John Smith on the other part, on the 19th of November, 1822, whereby he assigned the ship Octavia and cargo, and the brig Arab and cargo, and certain other vessels and cargoes, to the plaintiff, as security for certain advances made, and thereafter to be made, to them respectively, and according to their respective interests in the same, &c. &c. The first question is, as to the identity of these goods. Are they the proceeds of the cargoes of the Octavia and Arab, or either of them? If so, then the next question is, whether the plaintiff did acquire any legal title to them, as such proceeds, by virtue of the assignment above mentioned?

The first question is not much contested, and indeed seems to be made out by evidence, which, if believed, ought to be entirely satisfactory.

The second question depends upon the validity of the assignment itself, which has been controverted upon several grounds. In the first place, it is said, that, assuming the assignment to be bona fide, still no legal title to these proceeds vested in the plaintiff, or could so vest. The terms of the assignment are indeed admitted to be sufficient to pass the legal title, if it could pass at all; for the words not only grant and convey the original cargoes themselves, but also the "proceeds" of them. It is unnecessary, therefore, to say, what would be the case, if the words of the assignment had been confined to a mere conveyance of the original cargoes, although I profess to feel no difficulty on this point, considering that a grant of personal property carries with it a right to all the proceeds into which it may be afterwards converted by barter or otherwise. See Taylor v. Plumer, 3 Maule & S. 562. My judgment is clear, that at law the assignment was sufficient to carry the legal title to the proceeds. The argument is, that at law the proceeds of a cargo are incapable of being transferred; and the title is recognized only in equity. I think otherwise. A grant of goods, or of the proceeds of goods, confers on the grantee a good title at law to such proceeds, and vests a present legal interest capable of being vindicated in an action of replevin; and if there were no other objection to the assignment, this would present no obstacle to the plaintiff's recovery.

But in the next place, it is objected, that the assignment is not bona fide, but fraudulent in point of law and fact, in respect to creditors. I admit, that it is not, upon its face, a bottomry instrument, or maritime hypothecation. It does not purport to contain any clause or clauses taking marine risks, or claiming marine interest. It purports to be, not an absolute and indefeasible conveyance of the vessels and the cargoes, but a conveyance of them as security for advances already made, and thereafter to be made, to the assignors respectively. It is therefore, in its nature and essence, a mortgage, or conditional grant. It is not, as has been supposed at the bar, a mere pledge or deposit, if those words are to be understood in their strict meaning, but a conveyance or assignment of the goods themselves and their proceeds, as security. It is not the case of a lien, or special interest, but of a general grant, as security. Such a conveyance may be valid in point of law, although given for future advances, if it be bona fide and for a valuable consideration. This will hardly be denied, and indeed has been most solemnly settled. What then are the objections to it? It has been said, that it was fraudulent in its original concoction and intention in fact. But that point is not now insisted on. But it is still insisted, that, however innocent it may have been in intention, it is fraudulent in point of law, as to creditors. It is a case of constructive fraud. The circumstances relied upon to establish this result, I shall now proceed to consider. It is true, that the ad-

vances made, and to be made, were very large, and indeed the whole credits exceed $300,000. But George D'Wolf and John Smith were merchants in large business at the time, in good credit, and the times of payment were necessarily indefinite, being dependent upon the success of their commercial enterprises. The assignment embraces four vessels and their cargoes, all of which, except the ship Octavia, were at the time of the assignment, on foreign voyages to the northwest coast and China. The Octavia was, at the time, in the port of New York, with a cargo on board, and then bound on a like voyage. The plaintiff was a merchant of New York, and George D'Wolf and Smith were merchants of Rhode Island. The assignment was prepared and executed by all the parties at New York.

The first objection is, that the original bills of lading of the several cargoes were not delivered over to the plaintiff at the time of the execution of the assignment, or indeed at any subsequent period, although they must be presumed to be in the possession and control of D'Wolf and Smith. The fact is so; but the argument, that the assignment was therefore void, is a non sequitur. I have already stated, that all these vessels, except the Octavia, with their cargoes, were at sea when the assignment was made. It is also material to state, that the bills of lading were upon shipments made by the owners, but consigned, not to them or their order, but to the masters of the respective vessels, or their order, for sales and returns. Without question one set of these bills remained, as is usual, in the hands of the owners, as vouchers of their interest in the shipments. And if the set so in their hands had been indorsed to a bona fide purchaser, for a valuable consideration, without notice, it might have given him a title, if it had words of sufficient legal efficacy for this purpose, which might overreach the title under this assignment. But then it must have been because the words of the endorsement were effectual as an assignment of the shipments, and the circumstances such as would justly give a legal priority. The argument at the bar, upon the nature and effect of the endorsement of a bill of lading to convey a legal title, proceeds upon a mistake. The endorsement of a bill of lading, to convey such a title, must be made by a party authorized to make it, that is, by the person, to whom, or whose order, the goods are consigned. The consignee alone, and not the owner of the goods, can convey the same by an endorsement; for the negotiability of the bill of lading is limited to the persons to whom, or whose order, it is made transferable. Now, in all these cases, the cargoes were consigned to the masters for sales and returns, and they alone were competent to convey a title by an endorsement of the bill of lading, and a purchaser, claiming a title bona fide from them, without

notice, by an endorsement of the bills of lading by them, would be entitled to hold the same against every other person. The owner indeed, subject to this power of the master, in the intermediate time, to defeat the title by a bona fide endorsement, may, by an assignment on the back of the bills of lading retained by him, or by a separate instrument, convey a good title to any third person, against every person but a bona fide purchaser. But this results from his general right and interest, as owner, and not as holder of the bills of lading. In the present case, there is no claim made by any such purchaser. It is a struggle by creditors to overturn the assignment. My opinion is, that the delivery of the bills of lading in this case, being such as I have stated, containing a consignment, not to the owners but to the masters, were not necessary to be delivered or indorsed to the plaintiff, by the owners, to perfect the title of the plaintiff to the cargoes conveyed by the assignment, if in all other respects it is valid. The circumstance is open to observation upon the point of bona fides. It is not necessarily inconsistent with good faith. It is not indispensable to convey a legal title. The fact, such as it is, is for the consideration of the jury, as far as it touches the allegation of fraud, but not as a reason for impeaching the legal validity of the assignment, upon the ground relied on at the argument.

Another objection is, that no bills of sale of these vessels were executed, reciting the registers, or change of registers, which, it is contended, is fatal to the transfer. The law is clearly otherwise. Our ship registry acts do not, like the English act, render the transfer a nullity, unless the bill of sale contains such a recital, and in all other respects the transfer conforms to the registry acts. On the contrary, they leave the transfer to have its full effect, according to the principles of the common law. The only penalty of a non-recital of the register, and a correspondent change of papers, is, that the vessel ceases to enjoy the privileges of an American ship. This is applicable to the transfers of ships in port, and a fortiori the doctrine applies to ships at sea, where, pending the voyage, a change of papers is impracticable. U. S. v. Willings, 4 Cranch [8 U. S.] 48.

Another objection relates mere especially to the transfer of the ship Octavia and cargo. At the execution of the assignment she was lying with her cargo on board, bound on a voyage, and no actual delivery or possession of them took place by the plaintiff, which, it is contended, is indispensable to perfect the title. If this objection were well founded, it would not affect the conveyance of the other vessels and cargoes, which were at sea, if the assignment were bona fide; for it may be good as to part of the property conveyed, and fail as to the residue. But let the objection itself be considered, with reference to the circumstances of this case. Whatever may be its validity, in cases of an absolute

sale of a ship and cargo while in port, the same principle does not apply generally to cases of a defeasible conveyance. The general rule, upon transfers of personal property, is, that possession should accompany and follow the deed. But if, by the terms of the contract itself, or by necessary implication, the parties agree, that the possession shall remain in the vendor, such possession is consistent with the deed, and does not avoid its operation in point of law, unless it be in fact fraudulent. Now, in cases of mortgages, like the present, the possession of the mortgagor, at least until a breach of the condition, is perfectly consistent with the terms of the deed, and the intention of the parties. Indeed the present assignment demonstrates, that the parties could have no other intent. The object is avowed on the face of the instrument. The vessels and cargoes were to be under the direction of the mortgagors, for they had a substantial, resulting interest in the voyages. The only object of the parties was to give collateral security upon the vessels and cargoes for advances. Was this a lawful intent? Clearly it was. Was the agreement of the parties, that the possession and control of the vessels and cargoes, during their voyages, should be in the mortgagors, in point of law, and of itself, a constructive fraud, however innocent the intentions of the parties might be? I answer no. It was a circumstance open to explanation. If the assignment was, in all other respects, bona fide; if the want of possession was consistent with the terms of the deed, and indeed flowed from it; if the parties acted honestly and fairly, and held out no false colours to deceive creditors; then there is nothing in this circumstance which destroys the legal validity of the assignment.

Many authorities have been cited at the bar on this point; and some of them, from the Massachusetts Reports, have been pressed upon the court, as if they justified a different doctrine. See 2 Pick. 599; 17 Mass. 110; 2 Term R. 485; 9 Johns. 337. My opinion is that they are in perfect harmony with it. But if there be any difference between them and the decisions in New York, the latter must prevail in this cause; for this is a New York transaction, and is to be judged of by the test of New York law. Without going into the authorities at large, it is sufficient to say, that one of the most recent cases, Bissel v. Hopkins, 3 Cow. 166, is directly in point.[3]

Another objection is, that the plaintiff could acquire no title to the return cargoes, or proceeds of the property passing under the assignment, because all the bills of lading therefor were made out and consigned to George D'Wolf and Smith, as owners, and not to the plaintiff. It is said that this vested the property exclusively in them. The apparent ownership, upon the bills of lading, is conclusive upon no one, unless it be in favor of a bona fide purchaser, for a valuable consideration, under the consignee, which is not the present case. If a person has bona fide parted with his interest in a shipment, by a legal conveyance, the mere fact, that on the bills of lading he remains the ostensible owner, or consignee (as indeed he usually must, where the transfer is made while the ship is at sea), will not divest the title of the purchaser. It is sufficient if, as soon as he reasonably may after the return of the ship, he takes possession of the proceeds. In respect to the other return shipments in other vessels, if the evidence is believed, it establishes sincere and effectual diligence in obtaining the possession and sale of them. I will advert to the evidence in a summary manner. (Here the judge summed it up.) As to the twenty-three cases of silks, now in question, it is manifest, that every reasonable effort was made to take possession of them as soon as possible after their arrival in the Rob Roy at Boston. An agent was specially employed for the purpose. He gave immediate notice of the plaintiff's title at the custom-house. The bills of lading were transmitted to Bristol in Rhode Island to the agent of George D'Wolf there, who, in pursuance of an express authority for this purpose, immediately endorsed them, and sent them to the plaintiff at New York without delay. The Rob Roy arrived at Boston on the 25th of August, and on the 28th of the same month, the plaintiff applied at the custom-house at New York to have the goods entered there, having then possession of the bills of lading. So that, if the jury believe the evidence, it seems hardly possible to doubt, that there was extreme diligence in the pursuit of possession of the silks.

Another objection of a broader cast, and going to the original concoction of the assignment, is, that its object was to hold out the mortgagors as absolute owners of all the property covered by the assignment, and thereby to deceive the United States in particular, and the public at large, and that, in fact, they were so deceived, and gave credit to the mortgagors accordingly. Now, if such was the object of the parties, it was a fraudulent transaction, and as such it was void, as to all persons affected by the fraud, and especially as to creditors. On the other hand, if no false colours were held out; if the assignment was bona fide made for a valuable consideration, it would be valid, although it were given as security merely for future advances, and not as the present was, for past as well as future advances. The law does not prohibit such a transaction. How is the fact? It is said, that the assignment was concealed from the public, and that there has been gross negligence and fraud in the arrangements and management between the parties under it. That is for the consideration of the jury, under all the circumstances. As to the

---

[3] See, also, the learned note of the editor, in 3 Cow. 189, where nearly all the cases are collected. Bartlett v. Williams, 1 Pick. 288; Badlam v. Tucker, Id. 389; Dawes v. Cope, 4 Bin. 258.

-concealment, there is positive testimony, that the assignment was publicly known at Bristol, for at least two years before the failure of the mortgagors, and yet that their credit was not affected by it there, either in commerce generally, or in discounts at the banks. There is also evidence of its having been known for a long time before the failure at New York and at Boston. The indorsements on the policies at Boston demonstrate the existence of such knowledge, from the times they were respectively made, to the extent of the interest thereby assigned. Yet it is in proof, and not denied, that George D'Wolf continued to have large credits afterwards at the Boston banks.

I agree to the doctrine asserted at the bar, that if there has here been a fraudulent concealment of the assignment, or gross negligence, such as establishes an original fraudulent design, the assignment is void in toto. It is void ab initio, in respect to creditors injured by the fraud, as to all the property included in it, whether there has been any concealment of the title to the twenty-three cases of silks or not, and whether, as to them, there has been due diligence in taking possession or not. But if the assignment was bona fide, mere negligence as to one particular shipment in taking possession, would not take away the title to other shipments, as to which there was due diligence. The question reduces itself, then, to a question of good faith, valuable consideration, and reasonable diligence.

Then, again, it is said, that if D'Wolf and Smith failed to make the payments stipulated in the assignment, at the times therein stated, there was a breach of the condition, and the assignment became an absolute conveyance, exactly as if it had been originally without any such condition, so that possession must be taken subsequently in the same manner, as is by law required under absolute conveyances. What would be the effect of such a breach of the condition, whether it would wholly defeat any right or title of redemption of the assignors, or whether they would still be deemed, at least in a court of equity, to possess an interest in the proceeds beyond what would be necessary to pay the debts due for advances, need not be discussed in the present case. We may here confine ourselves to the objects and intentions of the parties, as disclosed in the assignment itself. If the possession has gone accordingly, and the shipments have been left under the control of the assignors no longer than those objects and intentions required, and the whole transactions have been bona fide, there is no principle of law, which precludes the plaintiff's right of recovery. Then, again, it is said, that the assignment of the policies was not made at the time provided for by the assignment. So far as this is true, it is for the consideration of the jury; they have heard the reasons for the delay, and will form their own conclusions as to the effect of this circumstance upon the point of fraud.

Another circumstance, relied on as pre-sumptive of fraud, is, that no notice of the assignment was given to the masters of the ships. In respect to those on the northwest coast, or in the Pacific ocean, it is not shown, that it was either practicable or important. In respect to the ship Octavia, as she was then in the port of New York, it was certainly practicable. But if the whole management of the voyages was, by the express agreement of the parties, to remain under the control of the assignors, until the return of the ships, such notice could not have varied the case, unless so far as the want of such notice is presumptive of fraud. Other circumstances have been relied upon for the same purpose. Such as the control of George D'Wolf and Smith over all the vessels and cargoes during their voyages; the consignment of the return cargoes to them; their entry of them at the custom-houses; the circumstances connected with the sale of the ship Octavia after her return; the arbitration and award with the master of the Quill respecting his adventure. So far as these are presumptive of fraud, they are fairly before the jury, with all the explanations which belong to them. (The judge here recapitulated the evidence on these points, and left it to the jury.)

Another objection to the plaintiff's right of recovery, in this action, is, that Capt. Meek was a joint owner with the plaintiff in the twenty-three cases of silks; and in an action of replevin no recovery can be had by one part-owner, without joining all the other part-owners as plaintiffs in the suit. The doctrine is undoubtedly true, that where a personal chattel is owned by several persons, all ought to join in a writ of replevin for it; and one part-owner has no right to bring such suit severally for his own share. If he does, and the objection is taken by way of plea in abatement, the writ will abate. And if he sues for a moiety only in his writ, the court will ex officio abate it. But I am clearly of opinion, that where the action is brought for the whole chattel, the exception is pleadable in abatement only, and is not a plea to the merits; and that pleading over to the merits is a waiver of it. In this case, my judgment would be, that the exception, if it were well founded, comes too late; it is not proper evidence under either of the pleas filed by the defendant. The defendant has no right to retain the property, unless it belonged to George D'Wolf; and it is of consequence to him, if the plaintiff is part-owner only, for as against every one but the other part-owner, or some person claiming his title, he has a right to the possession of the whole. A fortiori he has against a wrong-doer. Nor do I think that the cases cited from the Massachusetts Reports contradict this doctrine.[*] And if there be any contradiction in them I should incline to follow the earlier author-

---

[*] See Hart v. Fitzgerald, 2 Mass. 509; Portland Bank v. Stubbs, 6 Mass. 422; Gardner v. Dutch, 9 Mass. 427; Page v. Weeks, 13 Mass. 199; Ladd v. Billings, 15 Mass. 15.

ities as standing on the better legal reasoning. Still, though this is my opinion, I shall desire the jury to find this fact specially, and a special verdict for the plaintiff upon it, if Capt. Meek is a part-owner, enabling the court, however, to enter a general verdict for the plaintiff, if it shall be of opinion, that this exception cannot now prevail, and if the jury are in all other respects satisfied, that the plaintiff is entitled to recover. (The judge then summed up the facts as to the supposed joint ownership.)

The last objection, which it is necessary to notice, is that founded on the proviso contained in the 62d section of the revenue collection of 1799, c. 128. That proviso declares, "And to prevent frauds arising from collusive transfers, it is hereby declared, that all goods, wares, and merchandise, imported into the United States, shall, for the purposes of this act, be deemed and held to be the property of the persons to whom the said goods, &c. may be consigned, any sale, transfer, or assignment, prior to the entry and payment, or securing payment, of the duties on the said goods, &c. and the payment of all bonds then due and unsatisfied, by the said consignee, to the contrary notwithstanding." Upon a careful consideration of the whole section, my opinion is, that this clause has no reference whatsoever to the general question of property between vendor and vendee, and meant not to meddle with it. The sole object was the security of the duties to the government. A credit is allowed upon such duties to all importers, who have not any duty bonds due and unpaid at the time of the importation. Of persons in this predicament, payment of the duties is immediately demandable. The object of the proviso was, to prevent collusive transfers to obtain this credit, and evade this salutary restriction. The proviso was therefore intended to make the consignee, at all times, liable, as the importer and owner, so far as the duties were concerned, or, in the language of the proviso, "for the purposes of this act." Subject to this exception, the bona fide owner of the goods is entitled to vindicate his title to the same, as his lawful property, whoever the consignee may be. These are the most material considerations for the jury, upon the arguments made by the parties, and they will govern themselves accordingly.

General verdict for the plaintiff.