## Lord and al. *vs.* Ferguson.

The mortgagee of a vessel, who *has not taken possession*, is not liable for repairs made or necessaries furnished to the vessel, on the credit of the mortgagor, or other person having the equitable title.

A bill of sale is a good and valid conveyance of a vessel. The register at the custom house is not the sole or conclusive evidence of ownership.

Where the bill of sale of a vessel is unconditional, the purchaser is liable for supplies, though he may never have taken possession of the vessel, and though neither the master, nor the merchant furnishing the supplies, had any knowledge of the sale.

But where C. executed a bill of sale of a vessel to a creditor of his, and left the same at the custom-house without the creditor's knowledge, and the vessel subsequently arrived—was repaired, and fitted out again by C., when he executed a second bill of sale to said creditor, who thereupon took the first bill of sale from the custom-house—*held*, that the first bill passed no title, and subjected the grantee to no expenses of said repairs or outfit.

ASSUMPSIT, to recover for repairs made upon the brig Augusta by the plaintiffs, between Oct. 22, and Nov. 17, 1835.

It appeared in evidence, that prior to March 13, 1835, the brig Augusta was owned by Charles Cushing. On that day he executed a bill of sale of the vessel to the defendant, and left the same at the custom-house in Portsmouth, where it remained until March, 1836. At the time it was executed the vessel was absent on a voyage to the West-Indies.

On her return she was entered by Cushing, who afterwards cleared her for another voyage, in December, 1835, since which she has not been in the port of Portsmouth. After the bill of sale was thus left in the custom-house, there was no *change* of the register of the vessel there, nor did the defendant take any possession of her, or exercise any acts of ownership over her while she was in port.

The repairs were made by the plaintiffs at the request of Cushing. The bill for the repairs, with bills for the repairs on other vessels, were presented to him, and he made some payments. Whether the bill for these repairs was presented on his request or not, he could not state. It was afterwards withdrawn by the plaintiffs.

On the first of March, 1836, another bill of sale of the vessel was made by Cushing and delivered to the defendant, and the defendant about that time took the first bill from the custom-house, and in that month he sent to Boston, where the vessel then was, took possession of her, and procured a register in his own name.

Cushing testified that the defendant, being liable as endorser for him, had, a short time before the first bill of sale, applied to him for collateral security, and that there had been some conversation about the bill of sale before it was made; that it was never delivered by him to Ferguson, but was made at the custom-house, and left there by himself: That he considered it under his control, and should not have delivered it to the defendant, until he had executed to him some writing, showing that he held it as security: That he did not know that the defendant had knowledge of the execution of the bill at the time, and that the reason that a second bill of sale was afterwards made, was because he supposed the first was worth nothing after the vessel had entered and cleared.

Upon the foregoing evidence a verdict was taken for the plaintiffs, by consent—judgment to be entered according to the opinion of the court.

*Cutts,* for the defendant, contended that either bill of sale executed in this case was a mere pledge of property, and that the defendant became seized only as mortgagee or pledgee.

To the point that mortgagees not in possession were not liable for repairs, he cited *Story's Abbott on Shipping* 53 *and* 19, *note;* 8 *Johns.* 159, *McIntyre* vs. *Scott;* 1 *Hen. Bl.* 114, *Jackson* vs. *Vernon;* 18 *ditto* 169, *Champlin* vs. *Butler;* 15 *ditto* 298, *Leonard* vs. *Huntingdon;* 7 *Cowen* 697, *Thorn* vs. *Hicks;* 6 *Green.* 474, *Colson* vs. *Bonzey;* 2 *Hall's Rep.* 1.

*Emery & Bartlett,* for the plaintiffs, to the point that a deed, executed and delivered to another, without the knowledge of the grantee at the time, takes effect from the delivery, provided the subsequent assent of the grantee be given, cited 5 *N.H. R.* 71, *Buffum* vs. *Green & al. ;* 12 *Pick.* 141, *Hedge* vs. *Drew;* 3 *N. H. R.* 304, *Barnes* vs. *Hatch & al. ;* 10 *Mass.* 456, *Maynard* vs. *Maynard & als.*

As to the effect of a bill of sale and enrolment of a vessel, they cited 15 *Mass.* 477, *Tucker* vs. *Buffington & al. ;* 6 *N. H. R.* 95, *Hacker & al.* vs. *Young & als.*

UPHAM, J.   The authorities seem conclusive that the mortgagee of a vessel, *who has not taken possession,* is not liable for repairs made, or necessaries furnished to the vessel on the credit of the mortgagor, or other person having the equitable title.

"The question," says Chancellor Kent, in his invaluable Commentaries, "resolves itself into the enquiry, whether 'the circumstances afford evidence of a contract express or 'implied, as regards mortgagees not in possession?   If the 'claimant dealt with the mortgagor solely as owner, he can- 'not look to the mortgagee.   To whom the credit was given 'seems to be the true ground on which the question ought to 'stand."   On this principle the various apparently conflict-

ing authorities seem satisfactorily reconciled. 3 *Kent's Com.* 135; 1 *Hen. Bl.* 114, *Jackson* vs. *Vernon*; 7 *D. & E.* 306, *Westerdell* vs. *Dale*; 8 *Johns.* 159, *McIntire* vs. *Scott*; 18 *ditto* 169, *Champlin* vs. *Butler*; 15 *Mass.* 477, *Tucker* vs. *Buffington*; 6 *Green.* 474, *Colson* vs. *Bonzey*; 8 *Serg. & Rawle* 118, *Fisher* vs. *Willing*; 7 *Cowen* 697, *Thorn* vs. *Hicks*; 7 *J. B. Moore* 349, *Baker* vs. *Buckle*; 1 *Star. Rep.* 366, *Twentyman* vs. *Hart.*

The rule of law in such case is different from that adopted as to the liabilities of mortgagees of real estate not in possession, as held in *McMurphy* vs. *Minot*, 4 *N. H. R.* 251. The law of that case may be questioned, however, notwithstanding it is sustained by the high authority of *Williams* vs. *Bosanquet & al.* 1 *Bro. & Bing.* 72.

In *Southerin & al.* vs. *Mendum*, 5 *N. H. R.* 420, the duplicate light in which a mortgage may be viewed, is well explained. It is there said that the interest of a mortgagee is not in fact real estate, but a personal chattel; that a mortgage is a mere security for the debt—an incident to the debt, which cannot be detached from its principal. This should seem clearly to exempt the mortgagee out of possession from covenants running with the land, in the same manner as is holden in relation to the mortgagee of a vessel.

But does the case show a conveyance of the vessel in mortgage? Cushing, the former owner of the vessel, states that the defendant was liable as endorser for him, and prior to the first bill of sale had applied to him for collateral security.

But the bill of sale is unconditional in its terms, and is a perfect conveyance of the vessel. 3 *Kent's Com.* 130; 4 *Mason* 515, *DeWolf* vs. *Harris.* Nothing appears in the transaction to give it in any manner the character of a mortgage. If the defendant asserts a right under either of these bills of sale, he is bound by the terms of the conveyance under which he claims. This holds him forth to the world

as owner.   The register of a vessel at the custom house is not the sole or conclusive evidence of ownership.   6 *Green.* 474, *Colson* vs. *Bonzey.*   Where the bill of sale is unconditional, the purchaser is liable for supplies, though he may never have taken possession of the vessel, and though neither the master nor the merchant furnishing the supplies had any knowledge of the sale.   15 *Mass.* 477, *Tucker* vs. *Buffington & al.* ; 6 *ditto* 422, *Portland Bank* vs. *Stubbs & al.*

It becomes necessary, therefore, to determine the true date of the conveyance of the vessel, and whether the title passed to the defendant by the first or second bill of sale.

The circumstances, then, under which those conveyances were executed, must be enquired into.

It is clear that, in order to constitute a sale, a delivery of the instrument of conveyance must be made to the purchaser, or to some third person, for his use ; and it has been holden that if the grantee afterwards assent to the sale, the thing granted shall vest in him from the time of delivery, and with it he will be subjected to all the liabilities incident to a purchaser, from such time.   5 *N. H. R.* 71, *Buffum* vs. *Green* ; 3 *ditto* 305, *Barnes* vs. *Hatch & al.*

But was there any delivery of the first bill of conveyance ? From the case it appears that the grantee at the time knew nothing of it.   There was no change in the register of the vessel.   The vessel arrived—was repaired—and sailed again without any knowledge of this conveyance reaching him. Indeed, the grantor states that he considered the bill of sale under his control, and he should not have delivered it without some writing from the grantee, showing that he held it as security merely ; which would have made it an entirely different matter from what it purports to be upon its face.

After the vessel had entered, and cleared, the grantor considered the first bill of sale entirely worthless, and executed a new bill of sale, on the first of March, 1836, which he delivered directly to the grantee.   The grantee, also, about this time took from the custom house the first bill.

This is the sole evidence of the acceptance of the first bill appearing in the case. But this bill had already become inoperative. The purposes of its original execution had passed away. No effect had been given to it by a delivery, and it was wholly superseded by the second bill.

The title in the vessel was clearly in the grantor at the date of the second bill of sale of the vessel, and then passed to the defendant. It therefore was perfectly immaterial whether the defendant took possession of the first bill at that time or not. It was mere blank paper. It gave the defendant neither the right, nor subjected him to the liabilities, of owner.

The sole title of the defendant to the vessel dates *the first of March*, 1836. This is long after the repairs were made and the supplies were furnished. The defendant, therefore, is not liable for such expenditures, but they are a proper charge only against the then owners of the vessel. For this reason the plaintiffs cannot recover, but the verdict must be set aside, and there must be

*Judgment for the defendant.*