### CHARLES H. SPRAGUE *vs.* WILLIAM H. THURBER *et als.*

A bill of sale was given in form : —
    S.      bought of G.
 One quarter interest in the schooner Chas. H. Sprague, as per above receipt.
                  Rec'd payment, G.

*Held*, that the bill of sale passed the legal title to the one quarter part of the schooner.
*Held*, further, that a trust dependent on the passage of such legal title was therefore completely constituted.
*Held*, further, that after the death of G. the bill of sale would be reformed to allow the registry and enrollment of the schooner under the Revised Statutes of the United States, §§ 4170, 4312.
G. conveyed to S. certain property to indemnify S. against liability to pay more than one half the indebtedness of a certain venture of which G. was to pay the other half, and S. gave to G. a declaration of trust providing that the income should be

paid to G. until default, and in case of G.'s death, after payment, should be paid to G.'s daughter A. ; should she die, to G.'s daughter B. ; should both die, to the grand-children of G. After the death of G. his executors paid his one half of the venture. *Held*, that the trust continued in favor of the daughter, etc.

BILL IN EQUITY to reform a bill of sale.

*August* 1, 1891. MATTESON, C. J. This is a bill to reform a bill of sale. January 2, 1888, Gorham Thurber, being the owner of one fourth of the schooner Charles H. Sprague, sold and trans-ferred the same to the complainant by a memorandum of sale, of which the following is a copy : —

PROVIDENCE, R. I., January 2, 1888.

CHAS. H. SPRAGUE,

Bought of GORHAM THURBER,

One quarter ($\frac{1}{4}$) interest in the schooner Chas. H. Sprague, as per above receipt.

Rec'd payment,

GORHAM THURBER.

At the same time, pursuant to an understanding between them, the complainant signed and delivered to Thurber a receipt and declaration, of which the following is a copy : —

PROVIDENCE, January 2, 1888.

Received of Gorham Thurber, in trust for collateral security and other purposes, my note in his favor for $5,000, dated July 2, 1877, payable on demand with interest, also a bill of sale of one quarter ($\frac{1}{4}$) interest in the schooner Chas. H. Sprague; both to be held by me and in my name as trustee for the said Gorham Thurber, for the payment of his one half responsibility, in certain notes or renewals in full or in part given in my name or his, and indorsed by either of us, as joint owners in a certain corner of land in Minneapolis, Minn., except a $50,000 mortgage note at the Mech. Savings Bank. To be held by me (or otherwise mutually agreed), until this trust is fulfilled by the payment of said notes. Thereafter, whatever balance, or the full amount, may remain, to be returned to said Thurber, or to his order.

The income from this trust to be paid to the said Thurber, until he shall have defaulted in paying his one half of the principal and interest, on our joint indebtedness, for the said Minneapolis lot, and improvements thereon, save the $50,000 mortgage note.

In case of his death, the income from this trust, after the joint notes and interest are paid, to be paid to his daughter, Mrs. Hettie T. Sprague; should she die, then to his daughter, Alice Thurber; should they two die, the principal and income to be divided equally to the surviving grandchildren of the said Gorham Thurber.

CHAS. H. SPRAGUE.

The word "Grand" interlined as intended by *Gorham Thurber* and named to and understood by Chas. H. Sprague.

GORHAM THURBER.

September 6, 1888, Gorham Thurber died, leaving a last will and testament, which was duly admitted to probate, and in which the respondents, George T. Paine and William H. Thurber, together with the complainant, are named as the executors and trustees; all of whom duly qualified themselves to act, and are now acting, as such executors and trustees.

The complainant entered into possession and control of the said one quarter interest in said schooner, and of the note for $5,000 in the declaration of trust referred to, and has collected the interest and income therefrom, and retained the possession and control of said trust property, from January 2, 1888, to the present time.

The bill, after setting forth the above facts, alleges that the notes and indorsements in the declaration of trust mentioned, connected with the Minneapolis land therein referred to, have been paid since the decease of Gorham Thurber. That the complainant has applied to the collector of customs of Providence to transfer on the registry in the office his one quarter interest in said schooner sold and transferred to him by the bill of sale aforesaid, but that the collector refuses to make the transfer because such bill of sale does not conform to the requirements of the statutes of the United States, in that it does not specify the dimensions and description of the vessel with proper reference to its enrollment and registry, as in the act of Congress provided, and that the complainant is unable to obtain such transfer unless the respondents will join with him in their capacities as executors and trustees in executing a bill of sale of said one quarter interest in said schooner, which shall conform to said statutes. The bill prays for an answer, the oath thereto being waived, and that the respondents may be compelled

to join with the complainant in executing and delivering to him a bill of sale of said one quarter interest in said schooner conforming to the requirements of the statutes of the United States, and for general relief.

The answer of the respondent, Paine, admits the allegations of the bill, and further answering avers that on, or about, May 24, 1883, said Gorham Thurber and the complainant purchased a lot of real estate in Minneapolis, Minnesota, as tenants in common, each being seized of an undivided half; that May 17, 1886, they executed a joint mortgage of this real estate to secure the payment of $50,000, and that in addition to this mortgage they issued negotiable promissory notes to the amount of $22,000, signed by Sprague as maker and indorsed by Thurber, for money used in the erection of a building and other improvements upon the real estate, and that in order to secure Sprague against liability upon the notes so issued to a greater extent than his own one half thereof, said Thurber delivered to said Sprague the one quarter interest in the schooner with the note for $5,000 mentioned in the receipt and declaration of trust, which note had been given to said Thurber by said Sprague for money loaned by the former to the latter, as collateral for the payment of said Thurber's one half of the indebtedness incurred by them for their joint benefit in the land speculation aforesaid. That since the death of said Thurber, these respondents and the complainant, as executors of his will, have paid out of moneys in their hands belonging to his estate the one half of said notes for $22,000, and so discharged the liability of the estate of said Thurber therefor. The respondent, Paine, in his answer contends that the true construction of the receipt or instrument of trust signed by the complainant, and the true intention of said Thurber in delivering the property mentioned therein to the complainant, was to indemnify him against the payment by him of more than one half of the joint indebtedness, until such time as the profits from the joint investment should have finally paid off the notes for $22,000, and that, thereafterwards, the property should constitute a trust for the benefit of his daughter and grandchildren, as set forth in the receipt or instrument of trust; and he submits that said trust for the benefit of the daughters and grandchildren has failed and been defeated by the death of the said

Thurber before the notes and interest thereon had been paid out of the profits of the investment, and that the executors, having paid his share thereof out of the assets of the estate, are entitled to receive from the complainant the note for $5,000 and the quarter interest in the schooner as assets of the estate. The answer of the respondent, Paine, prays that it may be taken as in the nature of a cross bill, and for a decree ordering the complainant to surrender and deliver to the respondents as said executors the note and quarter interest in said schooner as part of the personal estate of said Thurber.

The answer of the respondent, William H. Thurber, neither admits nor denies the charges in the bill, nor the averments in the answer of his correspondent, and submits his rights to the judgment and decree of the court.

The cause was heard at a former term. The court was of the opinion that as the one half of the notes given by the deceased and the complainant, as security for which the property was primarily held by the complainant, had been paid, the further trust upon which the complainant held the property was purely voluntary, and, understanding the effect of the allegation in the bill to be that the so-called bill of sale was ineffectual to transfer the legal title to the one quarter interest in the schooner, and, therefore, that the trust was not completely constituted, was further of the opinion that the bill should be dismissed; the rule being conclusively established that, if the trust be voluntary and not completely created, equity will not enforce it, nor aid in its creation. *Colman* v. *Sarel*, 3 Bro. C. C. 12; also, 1 Ves. Jun. 50; *Ellison* v. *Ellison*, 6 Ves. Jun. 656; *Sloane* v. *Cadogan*, Sugden on Vendors and Purchasers, Appendix, 49; *Pulvertoft* v. *Pulvertoft*, 18 Ves. Jun. 84, 99; *Bunn* v. *Winthrop*, 1 Johns. Ch. 329, 337; *Minturn* v. *Seymour*, 4 Johns. Ch. 497; 1 Perry on Trusts, 4th ed. § 100.

The question of the legal effect of the bill of sale had not been raised at the hearing, and after the filling of our rescript the complainant asked to be heard upon the matter, and it was argued by counsel upon briefs submitted.

We think the complainant has conclusively shown by the authorities he has cited that the bill of sale, informal though it was, was, nevertheless, sufficient and effectual to pass the legal title to the

one quarter interest in the schooner to the complainant, both at common law and under the statutes of the United States. 1 Parsons on Shipping and Admiralty, 50 ; *Hozey* v. *Buchanan*, 16 Pet. 215, 219 ; *Wendover* v. *Hogeboom*, 7 Johns. Rep. 308 ; *Mitchell* v. *Taylor*, 32 Me. 434, 437 ; *Weston* v. *Penniman*, 1 Mason, 317 ; *De Wolf* v. *Harris*, 4 Mason, 515, 533. The trust was, therefore, completely constituted.

The statutes of the United States, however, require that every ship or vessel of the United States shall be registered or enrolled in the office of the collector of customs of the district in which is the home port of the vessel, which is defined to be that at, or nearest to which, the owner, or if more than one, the husband or acting and managing owner, resides. Revised Statutes United States, §§ 4141, 4312. To entitle her to such registry or enrollment, her owner must make application under oath, setting forth certain particulars as to her age, measurement, tonnage, etc. Upon receiving such registry or enrollment she becomes an American vessel, and entitled to all the privileges and protection which the laws confer upon that character. Revised Statutes of the United States, §§ 4141, 4312, 4131, 4311. Being so registered or enrolled, in case a transfer of any interest in her is made to a citizen of the United States, she shall be registered or enrolled anew ; otherwise she shall lose her character as an American vessel. Revised Statutes of United States, §§ 4170, 4169, 4312. And it is provided that the former certificate of registry or enrollment shall be delivered to the collector to whom the new application for registry or enrollment is made, to be by him transmitted to the register of the treasury to be cancelled, and further, that in every case of sale or transfer there shall be some instrument of writing in the nature of a bill of sale, which shall recite at length the certificate ; otherwise, the vessel shall be incapable of being registered or enrolled anew. Revised Statutes of United States, §§ 4170, 4312.

It follows that, though under the transfer in the case at bar the legal title to the one quarter interest in the schooner passed to the complainant, the vessel, being incapable of receiving a new certificate of enrollment and of being licensed as such, will, unless relief is granted, lose the privileges of an American vessel and be subjected to the disabilities attaching to a foreign vessel, viz. : the

payment of tonnage duties, port charges, etc.   Revised Statutes of the United States, § 4371.   This would work a great hardship, not alone to the complainant, but to her other owners, since it would practically debar her from employment in the coasting trade, for which, it is said, she was constructed and has been used.   We cannot suppose that this result, which must, necessarily, materially lessen the value of the quarter interest in the schooner as security and deprive the *cestuis que trustent* of the benefit of the dividends and income from her earnings, could have been contemplated, much less intended, by the deceased, and we are, therefore, of the opinion that the complainant is entitled to have the bill of sale reformed so as to conform to the requirements of the statutes of the United States, in order that the schooner may become capable of enrollment and of receiving a license to engage in the trade for which she was designed.

We agree with the respondent, Paine, that the true construction of the receipt or instrument of trust, and the intention of the said Thurber in delivering the property mentioned in it to the complainant, as gathered from it, was to indemnify the complainant against the payment of more than one half of the indebtedness specified until such indebtedness had been paid, either out of the profits of the investment or otherwise; but we do not assent to his claim that the trust in favor of the daughters and grandchildren has failed and has been defeated by the death of said Thurber and the payment of his share of the indebtedness out of the assets of his estate.   There is nothing in the declaration of trust which indicates that the trust was to terminate upon his decease; but, on the contrary, it is provided that, in case of his death, the income from the trust, after the joint notes and interest are paid, is to be paid to the daughter, etc.   We think the trust still continues.

*Francis W. Miner & William G. Roelker*, for complainant.
*John C. Pegram*, for respondents.