Donna Mitchell v. Seaborne Hospital    CV-97-182-B    03/01/99

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Donna Mitchell**</u>

    v.                                       Civil No. 97-182-B

<u>**Seaborne Hospital, Inc.**</u>
<u>**and Guy Frigon**</u>


<u>**MEMORANDUM AND ORDER**</u>


    Donna Mitchell has sued the Seaborne Hospital and its former employee, Guy Frigon, in a four-count complaint to recover damages for injuries she suffered when Frigon allegedly raped her.  Count I asserts that Seaborne Hospital is liable because it negligently hired and supervised Frigon.  Count II alleges that Seaborne is liable under the state's Consumer Protection Act because it improperly represented that Frigon was a certified counselor.  Count III alleges that Frigon is liable for negligently failing to maintain a professional relationship with Mitchell which, in turn, led to the rape itself.  Both Counts III and IV also allege that Seaborne is vicariously liable for Frigon's misconduct.  Seaborne has filed a motion for summary judgment attacking Mitchell's vicarious liability claims.  For the reasons that follow, I grant defendant's motion.

## I. BACKGROUND

Mitchell entered an in-patient alcohol addiction treatment program at Seaborne on June 17, 1996. She remained there until July 15, 1996, when she was discharged.

Seaborne hired Frigon as a "Counselor I" about three months before Mitchell was admitted. Counselor I is an entry-level training position that requires a trainee to undergo a probation period under the direction of more experienced counselors. Frigon was hired by Seaborne to perform Native American ceremonies with patients. Consequently, he had more individual contact with patients than was typical of other persons who were employed by Seaborne at the Counselor I position.

Mitchell attended several Native American ceremonies performed by Frigon including a drumming ceremony, a talking ceremony and a "sweat lodge." Frigon had access to Mitchell's medical records and he also attended staff meetings where her treatment plan was discussed. Frigon paid special attention to Mitchell while she was at Seaborne. He gave her poems and other small gifts and Seaborne's records reflect that she worked with Frigon on "spirituality and forgiveness." Mitchell alleges that these contacts were designed by Frigon to groom Mitchell for a sexual relationship after she left the hospital.

Approximately two days after Mitchell left Seaborne, Frigon obtained her telephone number from Seaborne's records and contacted her at her home in Laconia, New Hampshire. Frigon later met with Mitchell at her apartment on two occasions where they had consensual sexual relations. Frigon allegedly raped her at a third meeting after she rejected his advances. An expert witness retained by Mitchell has opined that: (1) Mitchell's medical records contained confidential information concerning prior rapes and incest that Frigon could have exploited in targeting Mitchell; and (2) the Native American ceremonies that Frigon conducted with Mitchell and the individual counseling he provided her were therapeutically improper and made her especially vulnerable to his later advances.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying

those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party makes this showing, the burden shifts to the non-moving party, with respect to each issue on which it has the burden of proof to demonstrate that a trier of fact reasonably could find in its favor. See id. at 322-25. The non-moving party cannot rest upon mere allegation or denial, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which it would bear the ultimate burden of proof at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). I view all the facts in a light most favorable to Mitchell, the non-moving party. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

## III. DISCUSSION

The question presented by Seaborne's motion for summary judgment is whether a reasonable jury could hold it vicariously liable for Frigon's actions. The answer to this question depends upon whether Frigon's conduct could be deemed to be within the scope of his employment under New Hampshire law.

-4-

The New Hampshire Supreme Court has not determined when, if ever, a therapist's sexual assault of a patient will support a vicarious liability claim against the patient's employer. Courts in other jurisdictions have reached differing conclusions on the question. Compare Block v. Gomez, 549 N.W. 2d 783 (Wis. Ct. App. 1996), review dismissed, 555 N.W. 2d 128 (Wis. 1996) (drug counselor who exploited treatment relationship to induce patient to consent to sexual relations; no vicarious liability); P.S. and R.S. v. Psychiatric Coverage, LTD., 887 S.W. 2d 622 (Mo. Ct. App. 1994) (treatment relationship; no vicarious liability); and Birkner v. Salt Lake County, 771 P.2d 1053 (Utah 1989) (no vicarious liability) with Doe v. Samaritan Counseling Center, 791 P.2d 344 (Alaska 1990) (vicarious liability possible); and Simmons v. United States, 805 F.2d 1363 (9th Cir. 1986) (vicarious liability possible). Those courts that have recognized vicarious liability claims in this context have tended to emphasize that the employee's sexual assault arose from and was made possible by his employment as a therapist. In contrast, courts that have declined to recognize such claims have relied primarily on the fact that the sexual assault was not motivated by a desire to serve the employer.

The New Hampshire Supreme Court has long focused its scope of employment analysis on whether the employee intended to aid his employer when he committed the acts on which the vicarious liability claim is based. Accordingly, the court ordinarily has recognized vicarious liability claims based on an employee's intentional misconduct only if the evidence would permit a finding that the employee acted in part to benefit his employer. Compare Daigle v. Portsmouth, 129 N.H. 561, 580-58 (1987) (vicarious liability claim allowed because jury could find that assault committed by on-call police officer was motivated in part by a purpose to serve employer); Richard v. Amoskeag Mfg. Co., 79 N.H. 380 (1920) (assault committed by employee in an attempt to enforce employer's work rules will support vicarious liability claim); and Rowell v. Boston & Maine R.R. Co., 68 N.H. 358 (1895) (vicarious liability claim arising from an assault allowed because jury could find from the evidence that assault was committed to further employer's business interests) with Dube v. International Shoe Co., 94 N.H. 459 (1947) (assault committed by co-employee not actionable where there was no evidence that assault was committed to benefit employer); and Morin v. People's Wet Wash Laundry Co., 85 N.H. 233 (1931) (assault by defendant's driver on a competitor not within scope of employment). In

Daigle, the New Hampshire Supreme Court's most recent treatment of the issue, the court also endorsed the restrictive scope of employment test described in the Restatement (Second) of Agency. See 129 N.H. at 579. In addition to proof that the employee's acts were motivated at least in part by a purpose to serve the employer, the Restatement test also requires proof that: (1) the employee's act was of a type that he was employed to perform; (2) the act on which the claim was based occurred within authorized time and space limits; and (3) if force was used intentionally by the employee, the force was not anticipatable by the employer. Restatement (Second) of Agency § 228(1) (1958).

Applying New Hampshire law to the present case, I conclude that no jury could find that Frigon was acting within the scope of his employment when he allegedly assaulted Mitchell. First, Mitchell does not allege that Frigon was hired for the purpose of developing sexual relationships with his patients. Second, the record demonstrates that Frigon was pursuing his own desires rather than his employer's interests when he allegedly assaulted Mitchell. Finally, it is undisputed that the alleged assaults occurred off premises, after Mitchell had finished her treatment and at a time when Frigon was not on duty. Under these circumstances, the mere fact that Frigon may have exploited his

employment relationship to groom Mitchell for his later assaults will not subject his employer to liability on a vicarious liability theory.

The fact that Seaborne cannot be held vicariously liable for Frigon's actions does not absolve it from liability. Mitchell may still prevail against Seaborne if she can prove that it acted negligently in hiring or supervising Frigon and that its negligence was a substantial cause of her injuries. See Marquay v. Eno, 139 N.H. 708 (1995). Defendant's motion for summary judgment (document no. 11) is granted.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March    , 1999

cc:  Steven Latici, Esq.
     John Friberg, Esq.
     James Shirley, Esq.
     Claire Rouillard, Esq.